UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JOHN B., | Case No. 22-12199 |
| Plaintiff, | Terrence G. Berg |
| v. | United States District Judge |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | Curtis Ivy, Jr. United States Magistrate Judge |
| Defendant. _____/ | |

**REPORT AND RECOMMENDATION
<u>CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 16; 17)</u>**

Plaintiff John B. brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 16), the Commissioner's cross-motion for summary judgment (ECF No. 17), and the administrative record (ECF No. 9).

For the reasons below, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 16), **GRANT** Defendant's

motion for summary judgment (ECF No. 17), and **AFFIRM** the Commissioner's decision.

I.     **DISCUSSION**

    A.     **Background and Administrative History**

Plaintiff alleges his disability began on March 30, 2016. On April 24, 2018, he applied for disability insurance benefits. In his disability report, he listed ailments which diminished his ability to work. His application was denied on September 5, 2018.

Following the denial, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). On January 3, 2020, the ALJ held a hearing, at which Plaintiff and a vocational expert ("VE") testified. On January 15, 2020, the ALJ issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff later submitted a request for review of the hearing decision. On March 31, 2021, the claim was remanded to the ALJ by the Appeals Council.

A new hearing was held on December 7, 2021. On February 1, 2022,[1] the ALJ issued an opinion which determined Plaintiff was not disabled within the meaning of the Social Security Act. On July 29, 2022, the Appeals Council denied

---

[1] The ALJ's opinion is dated February 4, 2022, but Plaintiff alleges the opinion was issued on February 1, 2022. (ECF No. 9-2, PageID.83; ECF No. 16-2, PageID.1828). This difference is not significant to the issues in this report and recommendation.

2

Plaintiff's request for review.  Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff commenced the instant action on September 16, 2022, following an extension to file by the Appeals Council.

### B.     Plaintiff's Medical History

The relevant portions of Plaintiff's medical record are discussed as required in the analysis portion of this report and recommendation.

### C.     The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 30, 2016, the alleged onset date.  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:

> (1) Osteoarthritis/Degenerative joint disease of the right shoulder with impingement, biceps tendinitis, and tenosynovitis status post rotator cuff and labral debridement as well as distal clavicle excision and subacromial decompression with acromioplasty; (2) Right elbow dislocation, status post closed reduction; (3) Right cubital tunnel syndrome / ulnar nerve neuropathy status post release/decompression at elbow; (4) Left tibia osteochondral plateau fracture with mild deformity status post open reduction internal fixation; (5) Osteoarthritis / Degenerative joint disease of the left knee; (6) Osteoarthritis of the bilateral ankles/feet with right ankle tendinitis; (6) Gout with gouty tophi status post right toe surgery; (7) Obesity; (8) Anxiety; and (9) Depression.

At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of

the listed impairments.  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined that Plaintiff had the RFC to perform sedentary work except:

> he can frequently push and pull using the right upper extremity; can occasionally push and pull using the lower extremities; can occasionally climb stairs and ramps, but cannot climb ropes, ladders, and scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can frequently reach overhead using the right upper extremity; can occasionally operate foot controls; occasionally requires use of a cane when ambulating distances of more than 25 feet, during which time he can lift and carry up to 10 pounds using the remaining free hand; must avoid concentrated exposure to vibration; cannot work at unprotected heights or around hazards, such as heavy equipment; can understand, remember, and carry out simple instructions and make simple work-related judgments; can maintain adequate attention and concentration to perform simple tasks on a sustained basis with normal supervision; can manage and tolerate simple changes in the workplace routine; and can adapt to the pressures of simple routine work.

At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were existing jobs in significant numbers within the national economy that Plaintiff could perform, such as sorter, charge account clerk, and regular clerk.  The ALJ therefore concluded that Plaintiff had

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

not been under a disability, as defined in the Social Security Act, since March 30, 2016.

### D. Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.[3] The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the

---

[3] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

5

burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Hum. Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

### E.  Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**F.     Analysis**

Plaintiff points to two sources of error: first he argues the RFC assessment is not supported by substantial evidence because the ALJ rejected all medical opinions about Plaintiff's work limitations and the rest of the record contains only raw medical data and diagnostic evidence. (ECF No. 16-2, PageID.1835). Second, he argues the vocational expert's testimony and the ALJ's corresponding finding at Step V is not supported by substantial evidence because the VE's

definition of "sedentary work" conflicts with the regulatory definition of sedentary work and the ALJ did not resolve this conflict. (*Id.* at PageID.1840). The Court shall address each of these arguments in turn.

Plaintiff first argues the RFC assessment is not supported by substantial evidence because the ALJ rejected all medical opinions about Plaintiff's work limitations and the rest of the record contains only raw medical data and diagnostic evidence. (*Id.* at PageID.1835). Plaintiff relies on *Deskin v. Comm'r of Soc. Sec.* to argue that "'where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment.'" 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) (quoting *Manso–Pizarro v. Sec'y of Health & Hum. Servs.,* 76 F.3d 15, 17 (1st Cir.1996)). Plaintiff argues that he has more than relatively little impairment and as such the ALJ was "required to obtain some medical opinion support for the extensive limitations fashioned here." (ECF No. 16-2, PageID.1837). Plaintiff notes the ALJ found he could perform "less than the full range of sedentary work, with numerous other physical and mental non-exertional limitations" and that an RFC for less than the full range of sedentary work reflects "very serious limitations resulting from an individual's medical impairment(s)[.]" (*Id.* at PageID.1836-37) (citing SSR 96-9p, 1996 WL 374185 (July 2, 1996)).

8

In response, Defendant asserts "Plaintiff's argument is contradicted by numerous decisions from the Sixth Circuit and this Court." (ECF No. 17, PageID.1853). Defendant argues that, while the Sixth Circuit has not commented on the *Deskin* decision specifically, the Sixth Circuit has repeatedly held that an ALJ need not base the RFC determination on a physician's opinion. (*Id.*) (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.' This argument is rejected.") (further citation omitted)); *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.").

In interpreting *Deskin*, Courts have clarified that "[f]irst, *Deskin* matters where an ALJ made an RFC determination based on no medical source opinion. Second, *Deskin* also matters where an ALJ made an RFC based on an 'outdated' medical source opinion 'that does not include consideration of a critical body of objective medical evidence.'" *Shelley v. Comm'r of Soc. Sec.*, No. 2:18-CV-676,

9

2019 WL 4023551, at *7 (S.D. Ohio Aug. 26, 2019) (quoting *Kizys v. Comm'r of Soc. Sec.*, No. 3:10 CV 25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011)). If a case falls within one of the *Deskin* circumstances, then an ALJ "has discretion to develop an RFC without a proper medical opinion where the medical evidence shows relatively little physical impairment such that an ALJ can render a commonsense judgment about functional capacity." *Id.* at *7 (internal quotations omitted).

The ALJ noted he did not find the opinions of Van Vandivier, Ph.D; H. Thompson Prout, Ph.D; Allen Dawson, M.D; and Douglas Back, M.D. to be persuasive. (ECF No. 9-2, PageID.80). The ALJ also considered the objective findings of Dr. Ethan Blackburn, Dr. Ryan Krupp, P.A. Jason Hupp, Dr. Eugene Jacob, Dr. Fred Preuss, and Dr. Daniel Tanbakuchi's when constructing the RFC. (*Id.* at PageID.75-81).

That said, the ALJ did not merely interpret raw medical data. The objective findings the ALJ considered were ones that a layperson can understand and render a commonsense judgment from. For example, the ALJ noted where Plaintiff's subjective complaints of limitations based on impairments involving the right upper extremity contradicted Dr. Blackburn's observation of 5/5 strength in the biceps and triceps and satisfactory movement. (*Id.* at PageID.76). The ALJ explained this "evidence is significant in that it shows that the claimant

experienced a significant injury to the right elbow and right upper extremity; however, the evidence shows that the claimant experienced significant improvement with treatment." (*Id.* at PageID.77). As to alleged limitations related to Plaintiff's shoulders, the ALJ considered the objective findings about the shoulders and explained Dr. Krupp noted "only 4/5 strength in multiple muscle groups of the right shoulder; however the claimant exhibited 5/5 strength in the left shoulder." (*Id.*). The ALJ noted "there is no indication that the claimant is unable to perform fine or manipulative functions with the right hand due to these impairments . . . . [T]he residual functional capacity adequately accounts for limitations in the right upper extremity by limiting the amount of overhead reaching, pushing and pulling that the claimant performs as well as limiting climbing ropes, ladders, and scaffolds." (*Id.* at PageID.77-78). Here, the doctors provided objective findings that a layperson can understand and the ALJ explained how these limitations were supported.

As to the allegations of left lower extremity limitation, the Plaintiff underwent an open reduction procedure of a left tibial plateau fracture and an external fixator was applied. (*Id.* at PageID.78). The ALJ noted "Dr. Jacob followed up with the claimant on a regular basis and noted ongoing improvement." (*Id.*). In July 2016, Dr. Jacob noted the claimant's lower extremity was not weight-bearing, but that he "was doing better." (*Id.*). In September 2016, Dr.

11

Jacob noted "the claimant was ambulating with a walker and was ready to transfer to a cane. Examination revealed no swelling or effusion in the knee. Dr. Jacob noted no instability." (*Id.*). In December 2016, Dr. Jacob noted "no motor deficit or instability[.]" (*Id.*). In summation, the ALJ stated:

> This evidence is significant in that it shows that the claimant experienced a traumatic injury to the left lower extremity that required surgery. However, it also shows that the claimant experienced improvement and regain stability and the ability to ambulate within a few months. Further, the Administrative Law Judge notes that the residual functional capacity accounts for the claimant's need of a cane by allowing for occasional use when the claimant ambulates more than 25 feet.

(*Id.*). Despite Plaintiff's argument that the ALJ reviewed "raw medical data" and Plaintiff's questions related to the basis for the ALJ's RFC limitations, the ALJ did not err. (ECF No. 16-2, PageID.1839) ("How could the ALJ possibly know that Plaintiff would not need a cane after ambulating for 15 feet or that he might not need it until ambulating 30 feet?"). The ALJ explained the record noted the ability to ambulate and no instability, and still the ALJ accounted for alleged lower left extremity limitations in the RFC. Lower left extremity instability and mobility challenges are not complex medical concerns that rendered the ALJ's assessment to be interpreting raw medical data.

The other alleged limitations are substantially similar. The ALJ noted where Plaintiff's alleged limitations clashed with commonsense objective findings in the medical record. Indeed, the ALJ explained he "does not find the claimant's

allegations to be fully consistent with the evidence. As previously discussed, the medical evidence and medical opinions do not support the claimant's allegations of disability. The claimant's allegations are also undermined by notes from his treatment records that indicate that he experienced significant improvement in his symptoms after undergoing multiple surgeries." (ECF No. 9-2, PageID.81).

Even when a case is within one of the *Deskin* circumstances, then an ALJ "has discretion to develop an RFC without a proper medical opinion where the medical evidence shows relatively little physical impairment such that an ALJ can render a commonsense judgment about functional capacity." *Shelley,* No. 2:18-CV-676 at *7 (internal quotations omitted). The record here shows relatively little physical impairment such that an ALJ can render a commonsense judgment from the objective findings in the medical record.

As to whether the medical source opinions were outdated and did not include consideration of a critical body of objective medical evidence, Plaintiff does not develop the argument that the source opinions are outdated and do not consider the body of objective medical evidence. Plaintiff asserts the ALJ relied on medical opinions "from over three years prior to the date of the ALJ decision" and the ALJ made "assumptions based on the content of the record dated more than five years prior to the date of the ALJ decision[.]" (ECF No. 16-2, PageID.1837; PageID.1839). Courts have interpreted Deskin to apply when the

13

ALJ relies on "outdated source opinion *that does not include consideration of a critical body of objective medical evidence*." Kizys, No. 3:10 CV 25, 2011 WL 5024866, at *2 (emphasis added) (citing *Deskin*, 605 F. Supp. 2d at 912). Plaintiff's only argument appears to be the source opinions are too old, not that the opinions relied on by the ALJ disregarded the critical body of objective medical evidence. Indeed, the undersigned is not persuaded that a medical opinion becomes outdated just because it is old. Nor does Plaintiff point to any recent medical records, or any medical records at all, which contradict the objective findings relied on by the ALJ. The Court does not raise arguments for the parties and Plaintiff does not develop a cognizable argument that the record ignores the critical body of objective medical evidence.

"Properly understood, *Deskin* sets out a narrow rule that does not constitute a bright-line test." Kizys, No. 3:10 CV 25, 2011 WL 5024866, at *2. "Unquestionably, the claimant bears the burden of proof as to the existence and severity of the limitations caused by her impairments." *Deskin*, 605 F. Supp. 2d at 911 (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 545 (6th Cir. 2007)). The undersigned suggests Plaintiff has not demonstrated *Deskin* is relevant to his case and remand is not appropriate.

Plaintiff's next argument is the vocational expert's testimony and the ALJ's corresponding finding at Step V is not supported by substantial evidence because

14

the VE's definition of "sedentary work" strays from the regulatory definition of sedentary work and the ALJ did not resolve this conflict. (ECF No. 16-2, PageID.1840). Plaintiff argues there is a "direct conflict between the vocational expert's testimony concerning the definition of sedentary work regarding Plaintiff's ability to lift and carry objects and the [Dictionary of Occupational Titles ("DOT")]." (*Id.* at PageID.1842).

Plaintiff indicates the ALJ asked the vocational expert if the definition of sedentary was that an individual could "lift and carry up to ten pounds occasionally and less than ten pounds frequently" to which the VE responded "[t]hat's correct, Your Honor[.]" (*Id.*) (citing ECF No. 9-2, PageID.121). Plaintiff argues this definition is not correct and the definition of sedentary work is that an individual can lift and carry up to ten pounds at a time and lesser items of nominal weight occasionally. (*Id.*) (citing 20 C.F.R. §§404.1567(a); 416.967(a)). He asserts the definition of sedentary work offered by the VE is "less restrictive than the definition of sedentary work in the regulations and the DOT" and the VE's testimony therefore conflicts with the DOT and the regulations themselves. (*Id.* at PageID.1842-43). Plaintiff argues this triggered the ALJ's duty to elicit a reasonable explanation for the conflict. Plaintiff asserts "there can be no reasonable explanation in this case because a vocational expert's testimony cannot

15

override the regulations" and the ALJ "made no attempt to reconcile the inconsistency." (*Id.* at PageID.1843).

The source of the conflict here is the definition of sedentary work and the frequency of carrying weight of 10 pounds or less. Sedentary work is defined as:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567. The ALJ asked the vocational expert if the definition of sedentary work was that an individual could "lift and carry up to ten pounds occasionally *and less than ten pounds frequently*" to which the VE responded "[t]hat's correct, Your Honor[.]" (No. 9-2, PageID.121) (emphasis added). The regulations and DOT for sedentary work permit lifting no more than 10 pounds at a time and the occasional lifting or carrying of "docket files, ledgers, and small tools[,]" but the VE's testimony permits *frequent* carrying of less than 10 pounds.

As a threshold matter, the Court notes the RFC adopted by the ALJ does not indicate that Plaintiff has the capability to frequently carry less than ten pounds. The only weight exception to sedentary work contained in the RFC is Plaintiff "occasionally requires use of a cane when ambulating distances of more than 25 feet, during which time he can lift and carry up to 10 pounds using the remaining

16

free hand[.]" (ECF No. 9-2, PageID.75). A conflict arises regarding the VE's testimony when a job the VE testifies the claimant can perform differs from the DOT's description of the job and the claimant's capability to do the job. *Kyle v. Comm'r of Social Security,* 609 F.3d 847, 853, n.9 (6th Cir. 2010) ("The type of conflict [SSR 00–4p] anticipates is not between the type of job claimant performed in the past and that which the VE opines [her] skills can transfer to in the future, but a conflict between the type of jobs the claimant has been determined by [a] VE to be able to perform and the DOT job description of the capabilities and skills required to do the job."). The RFC does not deviate from the DOT definition of sedentary work regarding how frequently Plaintiff can carry less than ten pounds, and Plaintiff does not argue so. In short, Plaintiff is arguing the VE's hearing testimony was wrong, but the RFC does not incorporate the incorrect answer. The ALJ relied on the VE's testimony that there are jobs Plaintiff could perform with his residual functional capacity. Ultimately, the "vocational expert's response to the ALJ's hypothetical question constitutes substantial evidence for finding Plaintiff not disabled." *Rose v. Saul*, No. 3:19-CV-455-DCP, 2021 WL 861706, at *8 (E.D. Tenn. Mar. 8, 2021) (quoting *Cobasky v. Berryhill*, No. 3:14-CV-01708, 2017 WL 2978508, at *13 (M.D. Tenn. July 12, 2017) (citing *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010))).

Even addressing the merits of Plaintiff's argument, the undersigned suggests remand is not appropriate. Plaintiff waived this argument. Where there is apparent conflict and the claimant fails to raise the issue at the hearing, "nothing in applicable Social Security regulations requires the administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge." *Harden v. Comm'r of Soc. Sec.*, No. 16-12394, 2017 WL 4946580, at *8 (E.D. Mich. Aug. 24, 2017) (quoting *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 637 (6th Cir. 2016)); *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006) ("When there is a conflict, the ALJ must resolve the conflict by determining if the explanation given by the expert is reasonable and provides a basis for agreeing with the expert rather than the DOT information. SSR 00–4p. Because Martin did not bring the conflict to the attention of the ALJ, the ALJ did not need to explain how the conflict was resolved."). As was the case in *Kepke*, Plaintiff's counsel here did not raise this conflict at the hearing and thus the ALJ was under no duty to investigate any further than he did.

Further, "neither the testimony of a vocational expert nor the occupational descriptions in the [DOT] necessarily trumps the other." *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008); SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000)

18

("Neither the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict."). The ALJ's opinion addresses the inconsistencies between the VE's testimony and the DOT. (ECF No. 9-2, PageID.82-83). The ALJ noted that "any inconsistency between the [VE's] testimony and the DOT was based on his experience functioning as a vocational rehabilitation worker and matching disabled workers with vocations." (*Id.*). The undersigned suggests the ALJ resolved any conflict between the VE's testimony and the DOT.

G. Conclusion

Plaintiff has the burden of proof on his statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Plaintiff has not shown legal error that would upend the ALJ's decision. For all these reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 16), **GRANT** Defendant's motion for summary judgment (ECF No. 17), and **AFFIRM** the Commissioner of Social Security's decision.

II. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Hum. Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: May 10, 2023                    s/Curtis Ivy, Jr.
                                       Curtis Ivy, Jr.
                                       United States Magistrate Judge